Curran, Dennis J., J.
This wrongful death action arises from a car accident that occurred on December 12, 2006 involving Jamisha King-Moore. Three years after the crash, Ms. King-Moore died from a complex autoimmune disease known as systemic scleroderma. At trial, the plaintiff Ronald Glover, the administrator of Ms. King-Moore’s estate, plans to offer the expert testimony of James Seibold, M.D. Dr. Seibold will testify that physical trauma, such as cervical injury from a car accident, can cause or exacerbate systemic scleroderma and that Ms. King-Moore’s injuries sustained in the accident of December 12,2006 caused her scleroderma.
The defendants William J. Taylor and Advocates, Inc. request that Dr. Seibold be precluded from offering expert testimony about the cause of Ms. King-Moore’s condition on the grounds that (1) the theory that physical trauma can cause systemic scleroderma is not generally accepted in the medical community, and (2) Dr. Seibold’s method for concluding that Ms. King-Moore’s scleroderma was caused by the physical trauma of the car accident is unreliable.[3]
On its face, the causal link between physical trauma and scleroderma may appear unusual to the layperson; however, such a perception shall not influence this Court’s responsibility to objectively assess the reliability of the proposed expert testimony under the familiar standards of Commonwealth v. Lanigan, 419 Mass. 15 (1994), and Mass. G. Evidence, section 702. Based on a straightforward application of those standards, the motion of William J. Taylor and Advocates, Inc. must be DENIED.
BACKGROUND
In order to assess the reliabiliiy of Dr. Seibold’s causation opinion, the parties rely on two transcripts of Dr. Seibold’s pre-trial testimony and their accompanying exhibits.[4] The following summary contains the pertinent evidence derived from these materials.
It is clear that Dr. Seibold is an international expert in scleroderma and its related conditions. Systemic scleroderma is a rare connective tissue disease in which the affected areas of the body. Dr. Seibold has proffered that the tissue of various internal organs in the case of Ms. King-Moore become hard and fibrous, causing the organs to function less efficiently.[5]
The exact cause of scleroderma is presently unknown, though the disease has been linked to trauma, chemical exposure and microchimerism (fetal cells circulating in maternal blood). There is no epidemiological study showing a statistically significant relationship between physical trauma and systemic scleroderma; however, the European League against Rheumatism, in its core curriculum, states that trauma is a cause of scleroderma. In addition, Dr. Seibold has referred to several published and peer-reviewed case studies in which individuals developed scleroderma within one to six months of physical trauma, such as car accidents. Several studies have also documented a causal connection between physical trauma and other related diseases on the “sclero-derma spectrum,” which supports the biological plausibility of a link between physical trauma and the type of systemic scleroderma suffered by Ms. King-Moore. Critically, Dr. Seibold has treated over 8,000 scleroderma patients, and avers that he has clinically observed individuals who developed scleroderma following traumatic events such as major surgical procedures and car accidents.
As to Ms. King-Moore’s specific condition, Dr. Seibold has examined her medical histoiy and opined that she did not have scleroderma or systemic sclerosis before the car crash. He identified a one-month delay between the accident and the onset of aggressive diffuse scleroderma. Though he could not completely rule out microchimerism as a cause of Ms. King-Moore’s systemic scleroderma, he noted that one would have expected a longer latency period between *240 Ms. King-Moore’s pregnancies and the onset of sclerosis if microchimerism were its cause. After reviewing Ms. King-Moore’s medical history, and considering her age, gender, and ethnicity, Dr. Seibold believes, to a reasonable degree of medical certainty, that the physical injuries from the car accident caused her sclero-derma.
DISCUSSION
A ruling on the admissibility of challenged expert testimony entails an “assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.” Commonwealth v. Lanigan, 419 Mass. 15, 26 (1993), quoting Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592-93 (1993). The ultimate test for admissibility is the reliability of the theory or process underlying the expert’s testimony. Id. at 24; Mass. G. Evid. §702(b) (2013). The proponent of expert opinion testimony bears the burden of proving its reliability. Pal-andjian v. Foster, 446 Mass. 100, 112 n.17 (2006).
The defendants first argue that the plaintiff cannot establish the reliability of the theory that physical trauma can cause systemic scleroderma because there is no epidemiological study demonstrating the causal link. The absence of such a study, however, does not compel a finding that Dr. Seibold’s theory is unreliable. Vassallo v. Baxter Healthcare Corp., 428 Mass 1, 12-13 (1998) (“doctors utilize epidemiological data as one tool among many”). The parly seeking to admit scientific evidence of causation may establish the reliability of the theory through other means, such as case studies and clinical research. See, e.g., Vas-sallo, 428 Mass, at 12-13; Hick’s Case, 62 Mass.App.Ct. 755, 761 (2005).[6]
In support of his theory of general causation, Dr. Seibold has cited several published case studies linking trauma to systemic scleroderma and other diseases on the scleroderma spectrum. He has testified that the European League against Rheumatism mentions trauma as a cause of scleroderma in its core curriculum and that the theory is supported by his own clinical observations in treating over 8,000 patients. These sources form a reliable basis for the theory that physical trauma can cause or exacerbate systemic scleroderma. See Vassallo, 428 Mass, at 12-13 (trial judge properly admitted general causation opinion linking silicone breast implants to connective tissue disease, despite absence of epidemiological data); see also Hick’s Case, 62 Mass.App.Ct. at 761 (upholding admission of testimony suggesting a causal relationship between a flu shot and blindness based on published case studies).
The defendants also contend that Dr. Seibold’s testimony on specific causation is unreliable because he has not engaged in the process of “differential diagnosis” to determine whether the car accident caused Ms. King-Moore’s scleroderma. The method of “differential diagnosis” often consists of a physical examination, the taking of a medical history, and the review of clinical tests in an effort to identify the cause of a medical problem by eliminating other potential causes. Hick’s Case, 62 Mass.App.Ct. at 761-62. As a general rule, a reliable differential diagnosis provides a valid foundation for an expert opinion on medical causation. Id. at 762, quoting Westberry v. Gislaved GumiAB, 178 F.3d 257, 263 (4th Cir. 1999).
In this case, Dr. Seibold reviewed Ms. King-Moore’s medical history before the accident. He has also examined test results and observations of her treating physicians after the accident, during which time Ms. King-Moore began to demonstrate symptoms of sclerosis. Dr. Seibold has considered this information in light of Ms. King-Moore’s gender, ethnicity, and age. He has explained his position that microchimerism was probably not the cause of Ms. King-Moore’s condition, though he stated he could not completely rule it out. Dr. Seibold’s methodology is the type normally relied upon in determining specific medical causation (see Hick’s Case, 62 Mass.App.Ct. at 761-62) and his opinion constitutes evidence-based reasoning—as opposed to mere speculation. See Vim Brode Group u. Bowditch & Dewey, 36 Mass.App.Ct. 509, 520 (1994) (“An expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation”). The defendants’ challenge to Dr. Seibold’s conclusion goes to the weight of this evidence, not its admissibility. See Commonwealth v. Gomes, 403 Mass. 258, 273 (1988).
In sum, Dr. Seibold’s opinion is sufficiently reliable for jury consideration, and shall be admitted at trial.
ORDER
For these reasons, the defendants’ motion to strike and preclude the expert testimony of Dr. James Seibold is DENIED.

On this motion, the defendants do not challenge Dr. Seibold’s conclusion that the scleroderma caused Ms. King-Moore’s disability and her eventual death.

he first day of testimony occurred in court on November 10, 2011 in the form of an evidentiary hearing on Dr. Seibold’s qualifications. The parties resumed testimony in a deposition setting on December 8, 2011. After all testimony had been taken, the parties submitted transcripts of both proceedings, along with supplemental legal argument, in March of 2012.

“Systemic scleroderma,” as compared to “hinted sclero-derma,” affects a larger area of the body and the internal organs. These conditions constitute two different forms of scleroderma, and are often referred to collectively under this more general term.

The defendants rely upon Meister v. Medical Engineering Corp. for the proposition that case reports are always insufficient to establish the reliability of an expert’s theory of medical causation. See 267F.3d 1123, 1127 (D.C.Cir. 2001). However, in Meister the plaintiff faced the heavier burden of establishing the reliability of a causal link between silicone breast implants and scleroderma in light of epidemiological studies that disproved the expert’s theory of causation. Id. at *241 1127, 1130. In this case, the defendants have not pointed to any epidemiological data refuting Dr. Seibold’s theory that physical trauma is a cause of systemic scleroderma.